

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD 1687-06

**CODY LEE OURSBOURN, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

COCHRAN, J., delivered the opinion of the unanimous Court.

### O P I N I O N

We granted review in this case to clarify when a trial court has the duty to instruct the jury on the voluntariness of a defendant's statement in the absence of any request for such instructions.[1] We hold that when the evidence raises an issue of the "voluntariness" of a

---

[1] We granted review of Appellant's sole question: "Did the court of appeals err by disregarding *Thomas* in preference of *Mendoza*, when deciding whether 'egregious harm' resulted by the trial court's failure to *sua sponte* instruct the jury pursuant to 38.22 and 38.23, where a factual dispute existed regarding the voluntariness of appellant's statement?"

defendant's statement under Article 38.22,[2] the trial judge must give a general voluntariness instruction under Sections 6 and 7 of that article because it is the "law applicable to the case." But when the defendant does not request this statutorily mandated instruction, the trial court's failure to include it is reviewed only for "egregious harm" under *Almanza*.[3] In this case, a majority of the court of appeals held that, because appellant did not object to the jury charge or request any instruction on voluntariness, there was no error in the charge.[4] We conclude that the trial judge did err, and therefore we reverse and remand the case to the court of appeals to determine if appellant suffered "egregious harm" under *Almanza*.

## I.

### The Background Facts and Procedural History

**A.    The Facts**

Frances Rapp drove her Chevy Impala to a Houston nightclub off Richmond Avenue one night in November, 2003.   Her friend, Brendon Martin, was with her.  As they got out of the Impala, they were "car-jacked" by a light-skinned man wearing dark clothes and gloves and a beanie on his head.  That man approached them and pointed a  semi-automatic handgun against Ms. Rapp's stomach and demanded her car keys.  She complied.  The gunman then drove off in her car, which was equipped with "OnStar," a communications and

---

[2] T EX. CODE CRIM. PROC. art. 38.22, §§ 6-7.

[3] *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985).

[4] *Oursbourn v. State*, ___ S.W.3d ___, No. 01-05-00141-CR, 2006 Tex. App. LEXIS 8407, at *18 (Tex. App.–Houston [1st Dist.] Sept. 28, 2006).

tracking service.  Ms. Rapp called both the police and "OnStar."

At about 3:30 a.m. that night, "OnStar" located the Impala.  HPD Sergeant De Los Santos was dispatched to the location–an apartment complex.  He waited until someone got into the Impala and drove it off, then he initiated a traffic stop.  But the driver, later identified as appellant, did not pull over; instead he sped up, leading Sgt. De Los Santos and three other patrol-car units on a short chase.  Appellant drove southbound in a northbound lane, then jumped out of the Impala and fled on foot.  When appellant tried to cross a bayou, he slipped on a rock and hit his head.  The officers caught up with him and took him into custody.  Because appellant suffered a minor injury, he was taken to Ben Taub Hospital.

The officers then contacted Ms. Rapp who came to the scene and gave them permission to search her car. The Impala was undamaged, but her purse, CDs, DVDs, and camera were missing. The "OnStar" manual was on the passenger seat, and its casing had been removed from the unit in the trunk.  Gloves like those worn by the car-jacker were on the console.

Two days later, HPD Investigator Colleen Guidry showed a photo lineup to Ms. Rapp, Mr. Martin, and a third witness, Olivia Martinez.  Although appellant's photograph was in the lineup, all three picked out other people.

Investigator Guidry then interviewed appellant.  She read him his *Miranda* rights, and he agreed to waive them and make a videotaped statement.  Investigator Guidry denied making any promises or threats or using coercion in taking the statement, and she said that

appellant never asked for a lawyer. She also said that he was injured and had a neck brace on, which impaired his ability to communicate somewhat, but otherwise he had no physical problem speaking. He did not appear intoxicated.

At first, appellant said that he had been at a different nightclub that evening. To get him to "tell the truth," Investigator Guidry lied and said that "some of the witnesses had picked him out of the photo spread," and they said that he had a gun. Appellant then admitted to the car-jacking, but said that he did not have a gun. He explained that the witnesses might have thought that he did because he is not able to flex his index finger and he had dark gloves on. Appellant did not tell Investigator Guidry that he was bipolar.

A week later, Ms. Rapp and Mr. Martin viewed a live lineup which included appellant, but again they picked out other people. Investigator Guidry described all of these identifications as "tentative" and thus "unreliable."

**B.      The Procedural History**

**1.      Pretrial**

Appellant was indicted for aggravated robbery. The trial judge ordered a competency evaluation, and appellant was interviewed on January 29, 2004, by a court-appointed psychologist, Dr. Edward P. Friedman, who concluded that appellant was incompetent to stand trial. Appellant was admitted to North Texas State Hospital for observation and treatment. Later that year, he was declared competent and returned to Houston to stand trial.

Appellant then filed a motion to suppress his videotaped statement, alleging that "he

was not competent to understand his rights and knowingly and voluntarily waive his rights to make the statement." He noted that the trial court had previously found him "incompetent in this case." At the hearing on his motion to suppress, the State called three witnesses: Sgt. De Los Santos testified to the facts of the arrest; Investigator Guidry testified about taking appellant's statement; and Dr. Friedman testified about appellant's mental status.

Dr. Friedman said that, based on his initial interview, appellant was not competent to stand trial because he was depressed and non-verbal. Appellant was "so depressed that he simply wasn't motivated to speak" and "might be too depressed to be motivated to cooperate with defense counsel." Dr. Friedman said that he met with appellant three more times during the following year and "felt that he was competent." He was communicative and "what he communicated to me was accurate and indicated that he did have both . . . an adequate and an accurate understanding of the criminal justice system." Dr. Friedman also stated that he thought that appellant was competent when he gave his videotaped confession on November 24, 2003, even though "initially he was fairly uncommunicative with the police officer who was interviewing him, just as he had been with me."[5] Dr. Friedman agreed that persons with bipolar disorder might "have trouble evaluating their constitutional rights and making a

---

[5] Dr. Friedman explained:
As the videotape continued and the interview progressed, he became increasingly more verbal with her. He appeared to not only understand what the allegations were, what the charges were against him, but he also appeared motivated to present his behavior in a way that suggested an alternative explanation for what he was charged with, which to me meant that he was at that time motivated to basically portray himself and his actions in a better light than those in which the offense report had portrayed them.

proper choice as to what to do with those in mind," but only if they were so depressed that they did not care what happened to them. In this case, appellant appeared depressed at the beginning of the tape, but he later appeared "very motivated to present himself in a more favorable light," which indicated that "he wasn't that depressed."[6]

Defense counsel argued that appellant's statement should be suppressed because, "looking at the first part of his statement where the warnings were given, is when he appeared to be uncommunicative and in a depressed state." The trial judge denied the motion to suppress without making findings of fact and conclusions of law.[7]

## 2.    The Trial

At trial, defense counsel argued in his opening statement that appellant had made a "false confession" to protect his girlfriend's relatives. When the prosecutor offered the statement into evidence, defense counsel renewed his objection "on the grounds that it's not a voluntary statement. The Defendant's bipolar and was incompetent to give consent." The trial judge overruled the objection and admitted the statement. After the State rested, defense counsel called appellant's mother, Elizabeth Stephenson, to the stand. Ms. Stephenson testified that appellant was diagnosed as ADD in elementary school and was put on Ritalin.

---

[6] The trial judge asked whether a person with bipolar disorder could be both competent and incompetent in a single 20-minute period. Dr. Friedman said no, because the mood swings just don't occur "that rapidly." When asked whether a bipolar individual in a depressed or manic state would be incompetent, Dr. Friedman said: "It might, but it doesn't necessarily mean that."

[7] The court of appeals abated this appeal to the trial court to make the findings of fact and conclusions of law required by art. 38.22, § 6. *Oursbourn*, __ S.W.3d at __, 2006 Tex. App. LEXIS 8407, at *4.

He was diagnosed as bipolar when he was 14. She explained appellant's mood swings and stated that on Saturday, November 22, 2003–the day of the offense–he was in a manic state. She said that he was still manic when she saw him in jail the following Monday.

The State called Dr. Friedman in rebuttal. He testified that appellant suffers from depression, and that, if he is bipolar, Dr. Friedman has seen him only in the depressed state. The prosecutor asked Dr. Friedman about appellant's statement:

Q     Dr. Friedman, have you reviewed the statement given to the police in this case?

A     I saw the videotape of the statement that he gave, yes.

Q     Do you think at the time that the Defendant gave that videotaped statement to the police that he was able to voluntarily give a statement to the police?

A     I believe so. I think he was depressed, but I think that the content of the videotape makes it clear that he was aware of what he was doing and, you know, aware of whom he was giving the statement to.

He acknowledged that on January 29, 2004, he found that appellant was not competent:

Q     Why was that?

A     At least I had a serious question about his competence. Because even though I saw no sign that he was, you know, delusional, hallucinating or in any other way out of touch with reality, he was acting so depressed at that time that I really couldn't get him to communicate with me to any meaningful extent. And I was concerned that he was so depressed that if he couldn't communicate with me, perhaps he was so depressed he couldn't communicate with his attorney as well.
            And for that reason, I recommended that he be found incompetent and committed to a state hospital for treatment.

Q     And was that done?

A     Yes.

Q      And the – his demeanor on the video interview was different from the demeanor he held with you on January the 29th?

A      At the very beginning he was similarly, you know, kind of shut down and, you know, acting withdrawn.  But within a few minutes on the videotaped interview with the police officer he began to talk very spontaneously, I thought.
         When I saw him in January of last year, I wasn't able to get him to talk, you know, as spontaneously as he had talked to the police officer in the videotape a couple of months before.

Dr. Friedman testified he then met with appellant on July 4th and July 30th and "felt at that time that he had become competent as a result of his treatment at the state hospital."

In closing argument, defense counsel again argued that appellant's confession was false and suggested that he was willing to make it because "a person with bipolar disorder might not have as good an appreciation for the consequences of what would happen to him if he protected somebody, say, with a false confession."

The State, in its closing, argued that the bipolar evidence was a rabbit trail:

And don't you also know that if his bipolar disorder in any way figured into what he did here, that there'd be a doctor up here to tell us all about it.  The only doctor you heard from was called by the State and he told you that at the time the Defendant committed this crime he knew it was wrong."

The jury found appellant guilty as charged and sentenced him to 75 years' imprisonment.

**3.      The Direct Appeal**

Appellant argued on appeal that the trial court erred in failing to instruct the jury on the law of voluntariness of custodial confessions.[8]  The court of appeals, in a two-to-one

_____

[8] Appellant claimed that the trial judge had a "*sua sponte*" duty to include such an instruction.  The term "*sua sponte*" in this context means simply that the applicable law requires the trial judge to include such an instruction under the appropriate circumstances.  The term "*sua*

decision, disagreed. The majority noted the potentially conflicting precedents that we mentioned in *Perry v. State*,[9] about whether the trial court must instruct the jury on the voluntariness of a custodial confession.[10] The majority concluded that a challenge to the voluntariness of a confession is a defensive issue; thus, under *Posey v. State*,[11] the defense must request a jury instruction before any error can result.[12] Justice Jennings dissented, stating that the majority had incorrectly found that there was no error in the jury charge and that it failed to conduct an *Almanza* "egregious harm" analysis.[13]

## II.

## The Pertinent Law

Under Article 38.21, "A statement of an accused may be used in evidence against him

---

*sponte"* does not increase or modify the trial judge's responsibility to instruct the jury on the applicable law.

[9] 158 S.W.3d 438, 443 & n.1 (Tex. Crim. App. 2004).

[10] The court of appeals suggested that one line of cases, represented by *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002), requires the defendant to request an instruction on voluntariness before any error can be found. The second line of cases, represented by *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986), focuses on the appellate standard of review for harm if the defendant does not request such an instruction.
In *Mendoza,* the question before us was whether the trial court properly included defendant's requested general instructions on voluntariness (based on art. 38.22), while excluding his others (based on art. 38.23). 88 S.W.3d at 239. In *Thomas*, the question was whether the trial court erred in failing to include a properly worded Article 38.23 instruction. Thomas had requested an *improperly* worded instruction. We found no error and opted not to decide "whether appellant preserved any asserted jury charge error." 723 S.W.2d at 707.

[11] 966 S.W.2d 57, 60-61 (Tex. Crim. App. 1998).

[12] *Oursbourn*, ___ S.W.3d at ___, 2006 Tex. App. LEXIS 8407, at *17-19.

[13] *Id.* at ___, 2006 Tex. App. LEXIS 8407, at *19-30 (Jennings, J., dissenting).

if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]"[14] A defendant may claim that his statement was not freely and voluntarily made and thus may not be used as evidence against him under several different theories: (1) Article 38.22, § 6–general voluntariness; (2) *Miranda v. Arizona*[15] as expanded in Article 38.22, §§ 2 and 3 (the Texas confession statute); or (3) the Due Process Clause.[16] It may be involuntary under one, two, or all three theories. A statement that is "involuntary" as a matter of constitutional law is also "involuntary" under Article 38.22, but the converse need not be true. The theory of involuntariness determines whether and what type of an instruction may be appropriate.[17] Thus, the first step in deciding upon an appropriate jury instruction is identifying the theory of involuntariness.

## A.    Claims of involuntariness under the Due Process Clause and *Miranda*

A confession may be involuntary under the Due Process Clause only when there is police overreaching.[18] Even if a confession is not the product of a meaningful choice (for

___

[14] TEX. CODE CRIM. PROC. art. 38.21.

[15] 384 U.S. 436 (1966)

[16] *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).

[17] *See* 41 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 13.391 at 218 (2d ed. 2001) ("Jury submission of matters under article 38.23(a) may be different from submission under article 38.22. Therefore, in some cases care must be taken to identify the basis for the defendant's claim that the jury should be instructed as to a need to disregard a self-incriminating statement.").

[18] *See Perry*, 158 S.W.3d at 446 (defendant not entitled to any jury instruction under art. 38.23(a) as evidence of his intoxication and injury "does not raise any constitutional voluntariness issues because this evidence does not involve any police coercion or other official

example, when it is made in response to hallucinations or to a private person's threat), it is nonetheless "voluntary" within the meaning of the Due Process Clause absent some coercive police activity. The Supreme Court made this clear in *Colorado v. Connelly*,[19] when it held that if there is no police coercion or overreaching, there is no due-process violation–even if a suspect is suffering from chronic schizophrenia and is in a psychotic state following the "voice of God" at the time he confesses.[20]  Absent police misconduct causally related to the confession, there is "simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."[21]  The Due Process Clause is aimed at protecting suspects from police overreaching, not at protecting people from themselves or other private actors.

The same is true for *Miranda* rights and waivers that apply to custodial-interrogation

---

over-reaching."); *Alvarado v. State*, 912 S.W.2dd 199, 211 (Tex. Crim. App. 1999) (statement involuntary under federal due process "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker").

[19]  479 U.S. 157 (U.S. 1986).

[20]  *Id*. at 164.  In *Connelly*, the defendant approached a Denver police officer and said that "he had come all the way from Boston to confess to the murder of Mary Ann Junta, a young girl whom he had killed in Denver sometime during November 1982." *Id*. at 160.  Unbeknownst to the police (who scrupulously followed the dictates of *Miranda*), the defendant was apparently obeying the "voice of God" which had instructed him "to withdraw money from the bank, to buy an airplane ticket, and to fly from Boston to Denver." *Id*. at 161.  Even though the evidence showed that the defendant was suffering from "command hallucinations that interfered with his volitional abilities; that is, his ability to make free and rational choices" and "he wasn't capable of making a 'free decision' to waive his *Miranda* rights," his confession was not involuntary under the Fifth Amendment. *Id*. at 161-64, 169-71.

[21]  *Id.* at 164.

statements. As the Supreme Court explained in *Connelly*: "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that."[22] Thus, the defendant's waiver of his *Miranda* rights, made under the perception of coercion flowing from the "voice of God, . . . is a matter to which the United States Constitution does not speak."[23] As Judge Posner has explained:

> The significance of the principle of *Connelly*, the principle that the Constitution doesn't protect the suspect against himself, is that if he understands the *Miranda* warnings yet is moved by a crazy impulse to blurt out a confession, the confession is admissible because it is not a product of coercion. The police have given him his *Miranda* warnings in an intelligible form; it is not their fault that he is impulsive.[24]

Statements that *have* been found to be involuntary under *Miranda* or the Due Process Clause were collected in *Connelly*;[25] they involve the crucial element of police overreaching and involve fact scenarios such as the following: (1) the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit;[26] (2) the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep;[27] (3) the police officers held a gun to the head of the wounded suspect to extract a

---

[22] *Id.* at 170.

[23] *Id.* at 170-71.

[24] *Rice v. Cooper*, 148 F.3d 747, 750 (7th Cir. 1998).

[25] 479 U.S. at 164 n.1.

[26] *Mincey v. Arizona*, 437 U.S. 385 (1978).

[27] *Greenwald v. Wisconsin*, 390 U.S. 519 (1968).

confession;[28] (4) the police interrogated the suspect intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food;[29] (5) the suspect was held for four days with inadequate food and medical attention until he confessed;[30] (6) the suspect was subjected to five days of repeated questioning during which police employed coercive tactics;[31] (7) the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail;[32] (8) the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep.[33]

As is evident from these fact scenarios, due-process and *Miranda* claims of involuntariness generally do not require "sweeping inquiries into the state of mind of a criminal defendant who has confessed."[34] They involve an objective assessment of police behavior. The Constitution leaves voluntariness claims based on the defendant's state of

---

[28] *Beecher v. Alabama*, 389 U.S. 35 (1967).

[29] *Davis v. North Carolina*, 384 U.S. 737 (1966).

[30] *Reck v. Pate*, 367 U.S. 433 (1961).

[31] *Culombe v. Connecticut*, 367 U.S. 568 (1961).

[32] *Payne v. Arkansas*, 356 U.S. 560 (1958).

[33] *Ashcraft v. Tennessee*, 322 U.S. 143 (1944).

[34] *Connelly,* 479 U.S. at 167.

mind "to be resolved by state laws governing the admission of evidence."[35] In Texas, that state law is Article 38.22, the Texas Confession Statute.

## B.      Claims of involuntariness under the Texas Confession Statute

Article 38.22 of the Code of Criminal Procedure sets out rules governing the admissibility of an accused's written and oral statements that are the product of custodial interrogation. Under our precedents, however, Section 6 of Article 38.22 applies to *both* an accused's custodial and non-custodial statements because it provides that only "voluntary" statements may be admitted.[36] Sections 2 and 3 apply to an accused's custodial-interrogation statements and provide that only "warned and waived" statements may be admitted. That is, an accused's custodial-interrogation statement is not admissible unless, prior to making the statement, he received the warnings provided in Article 15.17 or Article 38.22, § 2(a) or § 3(a) (which incorporate the requirements of *Miranda*), and he knowingly, intelligently, and voluntarily waived those rights.

Claims of involuntariness under Article 38.22 can be, but need not be, predicated on

---

[35] *Id.*

[36] *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999) ("Article 38.22, Section 6, literally applies to 'all cases where a question is raised as to the voluntariness of a statement of an accused.'"). In *Terrazas*, this court explicitly overruled *Nenno v. State*, 970 S.W.2d 549, 556 (Tex. Crim. App. 1998), to the extent that it held that Article 38.22, § 6 applied only to custodial statements. *Id.* However, the Court concluded in *Terrazas* that the trial court erred, as a matter of law, in ruling that the defendant's statement to a Department of Human Services investigator could be considered "involuntary." *Id.* at 726 (the investigator "telling [defendant] in a noncustodial setting 'what had to be' in her statement is not the type of practice that has been held to be inherently coercive as to make a statement involuntary").

police overreaching, and they could involve the "sweeping inquiries into the state of mind of a criminal defendant who has confessed" found in *Connelly* that are not of themselves relevant to due process claims.[37]  Article 38.22 is aimed at protecting suspects from police overreaching.  But Section 6 of that article may also be construed as protecting people from themselves because the focus is upon whether the defendant voluntarily made the statement. Period.  Does it appear–as Article 38.21 requires–that the statement was freely and voluntarily made without compulsion or persuasion?[38]  Or, in the case of a custodial-interrogation statement, did the suspect "knowingly, intelligently, and voluntarily" waive the rights set out in Article 38.22 § 2(a) or § (3)(a)?  These inquiries do not turn solely on police overreaching.  The behavior of the police may or may not be a factor.  A confession given under the duress of hallucinations, illness, medications,[39] or even a private threat, for example, could be involuntary under Article 38.21 and the Texas confession statute.[40]  The

---

[37]  *Connelly*, 479 U.S. at 166-67.

[38] T EX. CODE CRIM. PROC. art. 38.21 ("A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed.").

[39]  *See, e.g., Rocha v. State*, 16 S.W.3d 1, 19-20 (Tex. Crim. App. 2000) (trial court's general jury instruction under articles 38.21 and 38.22 concerning voluntariness of statement sufficed for jury to consider any evidence of his illness and medication; no error in denying instruction that specifically mentioned illness and medication as that would be a comment on the weight of the evidence).

[40]  This has long been the case in Texas.  *See Cain v. State*, 18 Tex. 387, 389-90 (1857) ("Before confessions can be received in evidence in a criminal case, it must be shown that they were voluntary. They must not have been obtained by the influence of hope or fear, applied by a third person to the prisoner's mind.").

defendant in *Connelly* did not have a valid federal constitutional involuntariness claim, but, had he confessed in Texas, he might have had a viable claim under Articles 38.21 and 38.22. As Professor Dix has noted, "evidence of a defendant's psychological abnormality" (such as Connelly's evidence of hallucinations and following God's command) "has its full logical relevance" under Texas law.[41]

Under Articles 38.21 and 38.22 and their predecessors, fact scenarios that can raise a state-law claim of involuntariness (even though they do not raise a federal constitutional claim) include the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary;[42] (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights;[43] (3) the suspect "lacked the mental capacity to understand his rights";[44] (4) the suspect was intoxicated, and he "did not know what he was signing and thought it was an accident report";[45] (5) the

---

[41] George E. Dix, *"Voluntariness" and "Intelligence" of Confessions as "Independent" Texas Law Issues,* 20 TEX. TECH L. REV. 1017, 1080, 1091 (1989).

[42] *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000).

[43] *Bell v. State*, 582 S.W.2d 800, 812 (Tex. Crim. App. 1979); *Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970).

[44] *Rogers v. State*, 549 S.W.2d 726, 729-30 (Tex. Crim. App. 1977) (finding reversible error in trial court's refusal to give jury general instruction on voluntariness of statement when evidence raised an issue that defendant lacked the mental capacity to understand and waive his rights before giving his statement).

[45] *Ritchie v. State*, 296 S.W.2d 551, 554 (Tex. Crim. App. 1956). In *Ritchie*, the evidence was undisputed that the defendant was intoxicated, but the trial judge found that he was not so intoxicated that he could not understand what he was doing. *Id.* Therefore, the trial judge "instructed the jury not to consider the [statement] unless they believed beyond a reasonable

suspect was confronted by the brother-in-law of his murder victim and beaten;[46] (6) the suspect was returned to the store he broke into "for questioning by several persons armed 'with six-shooters.'"[47]

In sum, the potential "involuntary" fact scenarios encompassed by Articles 38.21 and 38.22 are broader in scope than those covered by the Due Process Clause or *Miranda*. Although this Court has held that youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, they are factors that a jury, armed with a proper instruction, is entitled to consider.[48]

---

doubt that, prior to making the statement, the appellant was duly warned, and that thereafter he voluntarily and freely made the same and understood and signed it." This Court held that the trial court did not err in admitting the evidence and instructing the jury as he did. *Id.*; *see also Foster v. State*, 101 S.W.3d 490, 497 (Tex. App.– Houston [1st Dist.] 2002, no pet.) (noting that "[l]ack of sleep for as long as 16 hours does not, in and of itself, render a confession involuntary," and that "a person's illiteracy alone will not necessarily render his statement inadmissible.").

[46] *Hamin v. State*, 47 S.W. 656 (Tex. Crim. App.1898). As Professor Dix points out, in these early decisions, "It was simply beyond question that private coercion rendered a confession involuntary and that even private detention invoked the predecessor to article 38.22." Dix, 20 TEX. TECH L. REV. at 1083. After 1977, however, the provisions of Article 38.22 (except for Sections 6 and 7) apply only to custodial interrogations by law enforcement officials. *See* 41 DIX & DAWSON, *supra* note 17, § 13.31 at 33-35.

[47] *Warren v. State*, 29 Tex. 369 (1867); *See also* Dix, 20 TEX. TECH L. REV. at 1084.

[48] *See Rogers*, 549 S.W.2d at 729-30; *Ritchie*, 296 S.W.2d at 554; *see also Grayson v. State*, 438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (upholding trial court's ruling that statement was admissible despite defendant's mental retardation and stating that jury was given proper instruction to redetermine voluntariness; "Whether appellant had the mental competency or intelligence required to waive his right to remain silent and to have counsel present was for the court and the jury. The issue was fairly presented and resolved against appellant.").

**C.    Jury Submission of Voluntariness Instructions**

Under Texas statutory law, there are three types of instructions that relate to the taking of confessions:  (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under § 2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction.  In essence, the Section 6 "general" instruction asks the jury:  "Do you believe, beyond a reasonable doubt, that the defendant's statement was voluntarily made?  If it was not, do not consider the defendant's confession."  The Section 7 instruction sets out the requirements of 38.22, § 2 or § 3 and asks the jury to decide whether all of those requirements were met.  The Article 38.23(a) "specific" instruction is fact-based:  For example, "Do you believe that Officer Obie held a gun to the defendant's head to extract his statement?  If so, do not consider the defendant's confession."

As we noted in *Vasquez v. State*,[49] confusion exists about which, if any, jury instruction is appropriate because our case law "does not always distinguish, and sometimes blurs, the requirements for getting an instruction under article 38.22 and for getting an instruction under the exclusionary rule of article 38.23."[50]

We again try to clarify the distinction:  Due process and *Miranda* claims may warrant both "general" and "specific" voluntariness instructions; Texas statutory claims warrant only

[49]  225 S.W.3d 541 (Tex. Crim. App. 2007).

[50]  *Id.* at 544.

a "general" voluntariness instruction. It is the defendant's responsibility to delineate which type of "involuntariness" he is claiming–a general (perhaps subjective) lack of voluntariness or a specific police-coerced lack of voluntariness–because the jury instruction is very different depending upon the type of claim.

Obviously, the evidence must raise a "voluntariness" issue, and the defendant should request a jury instruction that relates to his theory of involuntariness. But if the defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for "egregious harm" under *Almanza*.[51]

1.      **Article 38.22, § 6 (General Voluntariness) Instructions**

Article 38.22, § 6 is a very detailed section that is essentially independent of the other sections contained within Article 38.22.[52] Section 6 provides:

> In all cases *where a question is raised* as to the voluntariness of a statement of an accused, *the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions*. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. *Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be*

---

[51] *See Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007).

[52] *See State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999) (deciding that Article 38.22, § 5's provision exempting non-custodial statements from the coverage of Article 38.22 did not apply to § 6).

*instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.* In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial. However, the state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings.[53]

The language "where a *question* is raised" contrasts with the language found in Article 38.22, § 7 and Article 38.23 which speaks of the *evidence* raising an issue.[54] Because raising a "question" is what triggers the trial court's duty under Section 6 to conduct a hearing outside the presence of the jury, the only reasonable reading of this language is that a "question is raised" when the trial judge is notified by a party or raises on his own an issue about the voluntariness of the confession. This is the sequence of events that seems to be contemplated by Section 6: (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary;[55] (4) if the trial judge decides that the confession was voluntary,

---

[53]Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 38.22, § 6 (emphasis added).

[54] *See* Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. arts. 38.22, § 7 ("When the issue is raised by the evidence . . . ") and 38.23(a) ("where the legal evidence raises an issue hereunder . . .").

[55] The trial judge must also make written findings of fact and conclusions of law in support of his ruling. Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 38.22, § 6. The need for written findings should alert the parties and trial judge to the need for a general voluntariness jury instruction as

it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction. It is only after the trial judge is notified of the voluntariness issue (or raises it on his own) that a chain of other requirements comes into play, culminating in the defendant's right to a jury instruction.

And Section 6 expressly dictates the content of that instruction to be as follows: "unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof." Because Section 6 contains its own jury-instruction provision, it is not governed by the jury-instruction provision found in Section 7.[56] The obvious purpose of Section 7 is to authorize and require jury instructions regarding the warnings and safeguards for written and oral statements outlined in Article 38.22, § 2 & § 3 (warnings on the right to remain silent, right to counsel, etc).

Consequently, a Section 6 instruction becomes "law applicable to the case" under *Posey v. State*[57] only if the parties actually litigate a Section 6 voluntariness issue before the trial judge. If such litigation occurs (on the admissibility of evidence for example), a jury

---

well.

[56] *See Terrazas*, *supra* (§ 5 not applicable to § 6, given the specific provisions found in § 6).

[57] 966 S.W.2d 57, 60 (Tex. Crim. App. 1998) (a defensive issue is not "law applicable to the case" unless the defendant timely requests the issue or objects to its omission from the jury charge).

instruction need not be specifically requested to pass the *Posey* gateway, although a request would still be necessary to obtain the most beneficial harm analysis under *Almanza v. State*.[58]

An interpretation of Section 6 that requires some sort of litigation before it becomes law applicable to the case accords not only with the statutory language but also with common sense. The broad range of voluntariness issues covered by Section 6 could easily be implicated by evidence that would also be relevant for other purposes, and Section 6 does not even require the existence of a factual dispute that might at least obliquely alert the trial judge to the need for an instruction. The Section 6 requirement that voluntariness be litigated in some manner before a jury instruction becomes necessary ensures that the trial judge is on notice that the instruction is required.[59]

For example, the evidence may be undisputed that the defendant did not sleep for 24 hours, or has a low I.Q., or was "high" on drugs at the time he gave his statement. If a reasonable jury could find that the facts, disputed or undisputed, rendered him unable to make a voluntary statement, he is entitled to a general voluntariness instruction when he has raised a question of the voluntariness of his statement.

## 2.  Article 38.22, § 7 (Statutory Warnings) Instructions

If the defendant made his statement as the result of custodial interrogation, he is also

---

[58]  686 S.W.2d 157, 171 (Tex. Crim. App. 1985) ("some harm" versus "egregious harm").

[59]  *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007) (noting that, although a defendant may be entitled to an Article 38.22 jury instruction even when the evidence is undisputed, "[s]ome evidence must have been presented to the jury that the defendant's confession was not given voluntarily.").

entitled–when the issue is raised by the evidence–to have the jury decide whether he was adequately warned of his rights and knowingly and intelligently waived these rights. Section 7 of Article 38.22 states:

> When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement.[60]

The phrase "the issue" refers to compliance with the statutory warnings set out in both Articles 15.17 (Duties of Arresting Officer and Magistrate) and 38.22, §§ 2 & 3, and the voluntariness of the defendant's waiver of the rights. For it to be "raised by the evidence" there must be a genuine factual dispute, just as is true under Article 38.23 issues. The same procedures–including a hearing outside the presence of the jury and the entry of written findings–that apply to a general voluntariness challenge under Section 6, also apply to a challenge that is made to the sufficiency of warnings and voluntary waiver of the rights communicated by those warnings. As with Section 6, the trial judge's Section 7 jury instructions are "general" ones that set out the pertinent law and legal requirements of Sections 2 and 3 (or, in an appropriate case, those of Article 15.17).[61]

But suppose there is some evidence that the police held a gun to the head of the defendant–who, unbeknownst to the police, had not slept for twenty-four hours–to extract the confession. In that case, the defendant may also be entitled to a fact-specific,

---

[60] TEX. CODE CRIM. PROC. art. 38.22, § 7.

[61] *See, e.g., Mendoza v. State*, 88 S.W.3d at 238 n.1 (Tex. Crim. App. 2002) (quoting a portion of an Article 38.22, § 7 jury instruction).

exclusionary-rule instruction, in addition to the two general voluntariness instructions.

**3.    Article 38.23 (Exclusionary Rule) Instructions**

Article 38.23 (a) states that

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.[62]

The wording is absolute ("the jury shall be instructed"), just as it is in Article 38.22, but the triggering mechanism is more complex.[63] As we recently held in *Madden v. State*,[64] the second sentence of Article 38.23 requires a jury instruction only if there is a genuine dispute about a material fact.[65] A defendant must establish three foundation requirements to trigger an Article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the

---

[62]T EX. CODE CRIM. PROC. art. 38.23.

[63] *See Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982).

[64] 242 S.W.3d 504 (Tex. Crim. App. 2007).

[65] *Id.* at 510; *See also Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008); *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000).

statement claimed to be involuntary.[66] The defendant must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement. [67] This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument.[68]

For example, the officer in our hypothetical may deny, on cross-examination, that he held a gun to the defendant's head to extract the confession. The implication by counsel, that the officer did perform that act, does not, by itself, raise a disputed fact issue. But if the defendant (or some other witness) testifies that the officer held a gun to his head, then a disputed fact issue exists. And the jury must resolve that disputed fact issue.[69]

If the jury finds that the officer did hold a gun to the defendant's head, the statement is involuntary as a matter of federal constitutional law. If the jury finds the officer did not do so, the statement is not constitutionally involuntary. Of course, if there is no disputed

---

[66] 242 S.W.3d 510.

[67] *Id. See also* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 4.194, at 282 (2d. ed. 2001).

[68] *Madden*, 242 S.W.3d at 513 nn. 22-23.

[69] A fact-specific, exclusionary-rule instruction might look something like this:
If you find from the evidence that Officer Obie held a gun to the defendant's head in an effort to make the defendant give him a statement, or if you have a reasonable doubt thereof, you will disregard the defendant's videotaped statement and not use it for any purpose whatsoever during your deliberations. However, if you find from the evidence, beyond a reasonable doubt, that Officer Obie did not hold a gun to the defendant's head in an effort to make the defendant give him a statement, then you may consider the defendant's videotaped statement during your deliberations.

factual issue–if there is a video definitively showing that the officer did or did not hold a gun to the defendant's head–the legality of the conduct is determined by the trial judge alone, as a question of law.  The legal question would never go to the jury.

Normally, "specific" exclusionary-rule instructions concerning the making of a confession are warranted only where an officer uses inherently coercive practices like those set out in *Connelly*.[70]  In Texas, if there is a disputed fact issue about whether this type of coercive practice was employed–by either an officer or a private citizen[71]–to wring a confession out of a suspect against his will, a specific exclusionary-rule instruction under Article 38.23 is appropriate.

**4.     Error in the Failure to Give Appropriate Voluntariness Instructions**

The question then becomes:  When does a trial judge err in failing to give an Article 38.22 or 38.23 jury instruction?  As the court of appeals noted, our cases might appear to be in conflict on whether there can be any error whatsoever–at least in the Article 38.23 context–absent a proper request by the defendant.  The court of appeals pointed to *Mendoza*, in which we stated, "Generally, when evidence from any source raises a defensive issue and

---

[70] *Connelly*, 479 U.S. at 164 & n.1; s*ee also State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999) (citing Note: *Evidence-Criminal Law-Constitutional Law-Due Process-Confessions-Judge and Jury-Determination of Preliminary Fact of Voluntariness of Confession*, 3 BAYLOR L.REV. 561, 563-65 (1951) (inherently coercive practices include: subjection to persistent and protracted questioning, threats of mob violence, unlawful detention incommunicado without advice of counsel or friends, and taking at night to lonely and isolated places for questioning)).

[71] *See Miles v. State*, 241 S.W.3d 28, 39 (Tex. Crim. App. 2007).

the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury."[72]  But that general statement does not imply the converse–that the trial court need never submit a jury instruction on a particular defensive issue unless the defendant properly requests one.  There is nothing in that sentence or in the rest of the *Mendoza* opinion that states or holds that the trial judge shall instruct the jury to disregard illegally obtained evidence *only* if the defendant requests a jury charge on that issue.[73]

---

[72]  *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002).

[73]  Indeed, the opinion indicates that the trial judge shall instruct the jury whenever a fact issue is raised concerning the legality of obtaining evidence.  A little later in *Mendoza*, we stated:

> Further, art. 38.23(a) provides that in any case where a party raises an issue regarding whether evidence was obtained in violation of the laws of Texas or the United States, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained because of such a violation, then the jury shall disregard any such evidence.

*Id.* at 239.  Then we stated:

> When the evidence presented at trial raises a factual issue as to whether a defendant had been warned of his rights and voluntarily waived them prior to making a statement, he is entitled to an instruction on voluntariness of the confession.  In such cases, it is proper to include in the jury charge a specific instruction informing the jury that, if it has a reasonable doubt as to whether a defendant knowingly, intelligently, and voluntarily waived his rights before giving a confession, it must disregard the confession and not consider it for any purpose.

*Id.* (citation omitted).  We later stated:

> In any case in which the evidence raises an issue regarding whether evidence was obtained in violation of the laws of Texas, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation thereof, then the jury shall disregard any such evidence.  The terms of art. 38.23(a) are mandatory. Therefore, when an issue of fact is raised as to compulsion or persuasion in obtaining a confession, a defendant has a statutory right to have the jury charged accordingly.

*Id.* (citation omitted).  Nowhere did we say that this statutory entitlement depends upon the defendant making a proper request for a jury instruction on "general" voluntariness or a "specific" instruction on illegally obtained evidence.

The court of appeals's argument for concluding that a trial judge has no duty to instruct the jury on the voluntariness of a defendant's statement under either Article 38.22 or Article 38.23 rests on the premise that the voluntariness of a confession is a "defensive issue."  And, under *Posey v. State*,[74] a trial court has no duty to instruct the jury on unrequested defensive issues–such as mistake of fact.[75]  A defensive issue is not "law applicable to the case" for purposes of Article 36.14[76] unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge.  Any other holding, we said in *Posey*, would render Article 36.14–which also requires a party to make specific objections to the charge–meaningless, and "might encourage a defendant to retry the case on appeal under a new defensive theory effectively giving him two bites at the apple."[77]  We stated that the result in *Posey* "in no way undercuts or limits *Almanza*'s analytical framework in cases to which *Almanza* applies" because when "*Almanza* speaks of 'errors' of commission and omission in the court's charge, it speaks of issues upon which a trial court

---

[74] 966 S.W.2d 57 (Tex. Crim. App. 1998).

[75] *Id.* at 60.

[76]T EX. CODE CRIM. PROC. art. 36.14 (stating, in pertinent part, that "in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.").

[77] 966 S.W.2d at 62-63.

has a duty to instruct without a request or objection from either party[.]"[78]

The principle in *Posey* is that no rule or statute requires the trial judge to give instructions on traditional defenses and defensive theories absent a defendant's request. As we recently stated in *Delgado*: "The trial judge has an absolute *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. But it does not inevitably follow that he has a similar *sua sponte* duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics."[79] These are also issues on which instructions are not mandated by any statute.[80] Thus, under *Posey*, it is only when a "requirement of [the] various statutory provisions referenced in Article 36.19 'has been disregarded,'" that the trial court errs in omitting instructions relative to that statute.[81]

---

[78] *Id.* at 61 n.9.

[79] *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (footnote omitted).

[80] For example, TEX. R. EVID. 105(a) explicitly recognizes that the advocates bear full responsibility for requesting appropriate limiting instructions when they are entitled to them. The rule states:

> (a) *Limiting Instruction.* --When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX. R. EVID. 105(a) (emphasis added). Trial judges should be wary of giving a limiting instruction under Rule 105(a) without a request because a party might well intentionally forego a limiting instruction as part of its deliberate strategy "to minimize the jury's recollection of the unfavorable evidence." *United States v. Johnson*, 46 F.3d 1166, 1171 (D.C. Cir. 1995).

[81] *Posey*, 966 S.W.2d at 60 & n.5.

But where a rule or statute *requires* an instruction under the particular circumstances, that instruction is "the law applicable to the case." Such statutes and rules set out an implicit "If-then" proposition: If the evidence raises an issue of [voluntariness, accomplice witness, confidential informant, etc.], then the trial court shall instruct the jury that [whatever the statute or rule requires]. In *Huizar v. State*,[82] for example, we held that Article 37.07 is "the law applicable" to all non-capital punishment proceedings. Thus, the trial judge must instruct the jury at the punishment phase concerning that law, including the fact that the State must prove any extraneous offenses beyond a reasonable doubt.[83] We distinguished *Posey* and explained the difference between instructing the jury on "defensive" issues and instructing them on the law that is applicable to all cases:

> In *Posey*, we held that "a defensive issue is not [law] 'applicable to the case' for purposes of article 36.14 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge." In contrast to a "defense" which depends on the defendant's theory of the case and the evidence presented, applicability of article 37.07 § 3(a) is not contingent on either party's theory of the case. Rather, article 37.07 § 3(a) is a legislatively prescribed burden of proof applicable to extraneous offense and bad act evidence admitted at punishment *in all non-capital cases*.[84]

---

[82] 12 S.W.3d 479 (Tex. Crim. App. 2000).

[83] *Id.* at 484.

[84] *Id.* at 484 n.7 (citations omitted). As was noted by the Austin Court of Appeals, the same is true for instructions on accomplice-witness testimony:
> An instruction as to the proper effect of accomplice-witness testimony . . . is not a defensive issue. Unlike defensive issues which are discretionary, the need for corroborating evidence when basing a conviction on an accomplice's testimony is codified by our legislature. TEX. CODE CRIM. PROC. ANN. art. 38.14. Although deciding which defensive issues to request is typically a strategic decision left to the lawyer and client, it is difficult to think of a situation where any reasonably competent lawyer would

Similarly, Articles 38.21-38.23 are legislatively mandated procedures governing the admission and consideration of a defendant's statements. Article 38.21 explicitly states that voluntary statements may be used in evidence "under the rules hereafter prescribed" –that is, Article 38.22 and Article 38.23.

Article 38.22, § 6 is "the law applicable" to any case in which a "question" is raised and litigated as to the "general" voluntariness of a statement of an accused. As noted above, under that statute, the trial judge must then (1) make an independent determination that the statement was made under voluntary conditions; and then (2) instruct the jurors that they shall not consider the statement for any purpose unless they believe, beyond a reasonable doubt, that the statement was made voluntarily.

Article 38.23 is "the law applicable" to any case in which a specific, disputed issue of fact is raised concerning the constitutional voluntariness of the making of the defendant's statement. These are statutorily mandated instructions and the trial judge must include them in the jury instructions when the voluntariness of a defendant's statement is at issue.[85]

---

not seek an accomplice-witness instruction for strategic reasons. We find that the statutorily required instruction regarding accomplice-witness testimony, unlike defensive issues, is "law applicable to the case." A failure to instruct the jury that an accomplice's testimony must be corroborated by other evidence tending to connect the defendant to the crime is error.

*Howard v. State*, 972 S.W.2d 121, 126 (Tex. App.–Austin 1998, no pet.).

[85] We recently reiterated this duty in *Pickens v. State*, 165 S.W.3d 675 (Tex. Crim. App. 2005):

Based upon our holding in *Almanza*, *supra*, that unobjected-to jury-charge error warrants reversal only when the error results in egregious harm, we have held that the question of whether the defendant has preserved jury-charge error is relevant

## III.

## Application of the Law to This Case

The question remains as to whether Article 38.22 or Article 38.23 jury instructions were "the law applicable" to this particular case. The court of appeals noted that "there was evidence presented before the jury that appellant was in pain, was lied to about the evidence against him, and displayed characteristics of being in a vulnerable mental state due to his bipolar disorder."[86] That evidence was sufficient, according to the court of appeals, "to raise the issue of voluntariness and to create a factual dispute as to voluntariness."[87]

We agree to a certain extent, but this evidence raised only a "general" voluntariness question under Article 38.22, § 6, not a constitutional due-process claim that the statement was illegally obtained under Article 38.23. Appellant's consistent claim, a claim which he had litigated in the trial court, was that he was bipolar and in a depressed or manic state and therefore he was unable to effectively waive his rights. There was evidence in the record that

---

only if there is a determination that error actually occurred. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986). *Thomas* also acknowledged that Article 38.23 provides in mandatory terms "that a jury is to be instructed to resolve factual disputes over whether evidence was illegally obtained and, therefore, inadmissible." *Id.* We have more recently reiterated that "an Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). Thus, if a defendant raises a factual dispute about whether evidence was illegally obtained, an Article 38.23 instruction must be included in the jury charge.
*Id.* at 680.

[86] *Oursbourn*, ___ S.W.3d at ___, 2006 Tex. App. LEXIS 8407, at *13.

[87] *Id.*

appellant, two months after giving his confession, was declared incompetent to stand trial. The State's psychologist who found him incompetent to stand trial testified that he was competent when he gave his confession, but, as appellant points out, that same psychologist testified that appellant was manifesting symptoms of his bipolar disorder during his interrogation, especially at the beginning. And appellant's mother testified that appellant was in a "manic" state shortly before and after his arrest. The issue of voluntariness should have been submitted to the jury under Article 38.22, § 6, because a reasonable jury could conclude, based on this evidence, that the statement was not voluntary. This is a statutory claim and focuses upon appellant's subjective mental state.

Appellant did not raise any disputed factual issue under Article 38.23 concerning the legality of obtaining his statement because there was no evidence of the type of police coercion or overreaching envisioned by the Supreme Court in *Connelly*. Like Connelly, appellant's confession may have been "involuntary" because of his own subjective mental status, but not because of illegal police conduct. Although appellant notes that Investigator Guidry lied to him about some witnesses having identified him in the photo spread, it is well established that lying about the state of the evidence is not the sort of "overreaching" that implicates the Due Process Clause, as long as the subterfuge used is not one likely to produce an untrue statement.[88] Furthermore, there was no factual dispute concerning Investigator

---

[88] *See Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (refusing to find that a defendant who confesses, after being falsely told that his codefendant has turned State's evidence, does so involuntarily); *Rodriquez v. State*, 934 S.W.2d 881, 890-91 (Tex. App.–Waco 1996, no pet.) ("The fact that the interrogating officers falsely stated to Rodriquez that the victim, on his

Guidry's conduct. She lied about the result of the photo line-up. That is undisputed. The trial judge would resolve any purported due process claim as a matter of law because there was no factual dispute. Therefore, a jury instruction under Article 38.23 is not "the law applicable" to this case.

Article 38.22, § 6 was "the law applicable" to this case; Article 38.23 was not. But because appellant never requested an Article 38.22, § 6 "general" voluntariness instruction, he is entitled to review of that error only under *Almanza*'s "egregious harm" standard.[89] Under that standard, reversible error in the omission of a required jury instruction without objection occurs only when a defendant has been denied "a fair and impartial trial."[90] We

---

deathbed, identified him as the assailant does not support a finding that the confession was involuntarily given. The voluntariness of a confession is not destroyed, and a confession induced by deception or trickery, is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process."); *Snow v. State*, 721 S.W.2d 943, 946 (Tex. App.– Houston [1st Dist.] 1986, no pet. ) ("voluntariness is not destroyed, and a confession induced by deception or trickery is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process."); *see also Holland v. McGinnis*, 963 F.2d 1044, 1051-52 (7th Cir. 1992) (police officer's misrepresentations concerning the strength of the evidence against the suspect "interfered little, if at all, with his 'free and deliberate choice' of whether to confess, for it did not lead him to consider anything beyond his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime. In other words, the deception did not interject the type of extrinsic considerations that would overcome Holland's will by distorting an otherwise rational choice of whether to confess or remain silent.") (citation omitted); *see generally*, C.T. Drechsler, *Annotation, Admissibility of Confession as Affected by Its Inducement through Artifice, Deception, Trickery, or Fraud*, 99 A.L.R.2d 772 (1965 & Supp. 1993).

[89] Under *Almanza*, the issue to address is the impact of the omission of a "general" voluntariness instruction. *See Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002); *see also Posey*, 966 S.W.2d at 60 n.3

[90] *Almanza*, 686 S.W.2d at 171.

therefore reverse the court of appeals and remand this case for further proceedings consistent with this opinion.

Delivered:  June 4, 2008

Publish