# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00731-CR

**Juan Corona, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. D-1-DC-10-904082, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Juan Corona guilty of two counts of indecency with a child by contact and assessed punishment for each count at ten years' imprisonment and a $10,000 fine. *See* Tex. Penal Code Ann. § 21.11 (West 2011).  On the jury's recommendation, imposition of sentence was suspended on the second count and appellant was placed on community supervision (which is being served concurrently with his prison sentence).  Appellant's only issue on appeal is that his statement to the police was involuntary and should have been suppressed by the trial court. We overrule this contention and affirm the convictions.[1]

The complaining witness testified that her mother dated appellant in 2007, when the complainant was eight years old.  She and her mother sometimes spent the night in appellant's

---

[1] We modify the judgment of conviction on count two, which erroneously states that appellant waived a jury trial and pleaded guilty.

apartment, with the complainant sleeping on a cot while the adults slept in a bed in the same bedroom. On two occasions, appellant came to the complainant during the night and touched her breasts and vagina. She did not tell her mother about these incidents for two years. When she did, according to the complainant, her mother did not contact the police because she feared being deported. The complainant later made an outcry at her school, and her teacher reported it to the police.

Appellant was first questioned by the police on June 1, 2010. Appellant drove himself to the interview, was not under arrest, and was told that he could leave at any time. Appellant's primary language is Spanish, and he was questioned in that language by Officer Art Carrizales, who translated for Officer Robert Driscoll. During this interview, which lasted about ninety minutes, appellant steadfastly denied any inappropriate touching of the complainant. Appellant returned home at the conclusion of the interview.

The second interview took place on June 8, 2010. As before, appellant drove himself to the interview, was not under arrest, and was told that he could leave at any time. Carrizales was again the primary questioner. At first, appellant continued to deny touching the complainant. As the interview progressed, however, appellant began to change his story. He suggested that he might have touched the complainant accidentally while swimming. Then, he said that he had touched her simply to wake her up and move her to the bed. Finally, appellant said that he touched the complainant "[j]ust to feel her body, nothing more, not to make me feel good. Not for anything else." The June 8 interview lasted about three hours, after which appellant returned home.

Appellant contends that the trial court should have granted his motion to suppress the incriminating statements made during the June 8 interview because they were involuntary as a matter

of constitutional and statutory law. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, §§ 10, 19; Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). Although appellant cites the Texas Constitution, he does not argue that it affords him greater protection than the United States Constitution. We review the trial court's ruling for an abuse of discretion. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

The Fifth Amendment applies only to statements made during custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 469-70 (1966); *see also* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3 (West 2005). Appellant does not point to any evidence that he was in custody when he made the challenged statements. Therefore, his Fifth Amendment claim fails.

Appellant's primary argument is that his June 8 statements were involuntary under the Due Process Clause and article 38.21. A confession is involuntary as a matter of due process when there is official coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). Absent coercive police activity, a statement is not involuntary within the meaning of the Due Process Clause even if it was not the product of a meaningful choice by the speaker. *Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008). Under article 38.21, which works in tandem with article 38.22, section 6, an involuntariness claim need not be predicated on police overreaching of the sort required under due process analysis. *Id*. at 172. The focus of the statutes is on "whether the defendant voluntarily made the statement. Period." *Id*.

Appellant argues that his incriminating statements "were the product of an essentially coercive and influential interview process" in which the police made it clear that they "would

3

continue to question him until he provided the answer they wanted." He urges that "[i]t is reasonable to assume that [appellant] might have been untruthful in his interview just to bring the interview to an end as Carrizales inferred he could." Appellant cites this exchange between defense counsel and Carrizales at the suppression hearing:

> Q. . . . Would you agree with me that [appellant] during the interview process responds over a hundred times, no, I did not touch her prior to saying he did touch her?
>
> A. He responded several times—I couldn't give you an amount, the amount of time he responded, but he did respond several time that he did not touch her.
>
> Q. Okay. And when you say several times, you mean more than five times certainly?
>
> A. Probably, yes.
>
> Q. And probably more than 20 times?
>
> A. I can't be certain of that.
>
> Q. Okay. But you went back and forth with him over the course of more than two hours directly questioning whether or not he touched her; is that correct?
>
> A. Yes, sir.

Appellant also cites this passage from the transcription of the June 8 interview:

> [Carrizales:] But your intention was not in order to wake. It wasn't that.
>
> [Appellant:] Then it was to touch her?
>
> [C:] That is what I want you to tell me.
>
> [A:] Look, my intention was to wake her up. But then, must I say that my intention inside my head was to touch her?

4

[C:] No you don't have to say anything that is not true. We want you to tell us why you touched her. What was the reason you touched her. You did not touch her on her vagina in order to wake her. That's not how it was. I want you [to] tell me what your intention was, please don't say it was to wake her.

At the suppression hearing, Carrizales was asked by defense counsel, with respect to this passage from the interview, "And would you also agree with me that it's fair to say that [appellant] was now aware that there was a certain response that you wanted from him before this interview was going to end?" Carrizales answered, "Yes, sir."

Appellant would have us read the quoted exchange between Carrizales and appellant as the officer telling appellant that he must admit that he deliberately touched the complainant in the manner she alleged. It is at least equally reasonable, however, to understand Carrizales to say that he wanted appellant to tell him the truth, whatever that might be. While it is obvious that Carrizales did not believe that the touching was an accident or an effort to awaken the complainant, the trial court could reasonably conclude that Carrizales was not threatening to question appellant interminably until he inculpated himself.

Appellant also suggests that Carrizales used appellant's "unclear" immigration status and his fear that he would lose custody of his children to coerce a confession. Appellant cites no evidence, however, as to what appellant's immigration status is, nor does he point to any mention of that status by Carrizales during the interview. It was appellant, not Carrizales, who brought up the subject of his former wife and his fears that child protective services might take his children from him. As to this, Carrizales told appellant that so long as the allegations made by the complainant remained under investigation, "[his wife] will realize what they are investigating you for and she can tell the CPS that she wants the girls and they might give them to her. I am not saying that it is going

5

to happen but her chances will be better." There is nothing in this statement that suggests that appellant would be better off if he confessed his guilt or threatens appellant with a loss of his children if he did not confess.

While we recognize that the three-hour police interview may have been unpleasant, we find no evidence of the sort of police coercion or overreaching that has been deemed to violate due process and render a confession involuntary. *See id*. at 170-71 (collecting cases). The trial court could reasonably conclude from this record that appellant's statements to the police were "freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. Ann. art. 38.21. Finding no abuse of discretion, we overrule appellant's single issue on appeal.

The judgment of conviction on count one is affirmed. The judgment of conviction on count two is modified to state that appellant pleaded not guilty and that a jury convicted him and assessed his punishment. As modified, the judgment on count two is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed in Part; Modified and, as Modified, Affirmed in Part

Filed: August 11, 2011

Do Not Publish