

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00332-CR
_____

ROBERT MONROE BABCOCK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. 3738, Honorable Stuart Messer, Presiding

June 13, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Robert Monroe Babcock was convicted of the capital murder of his four-year-old son and sentenced to life imprisonment. He raises four issues in challenging that conviction, all of which relate to his mental competency. Those issues involve 1) the trial court decision to admit three statements he gave to law enforcement officers though they were allegedly involuntary, 2) the jury's rejection of his insanity defense, and 3) the trial court's refusal to charge the jury on the purportedly lesser-included offense of criminally negligent homicide. We affirm the judgment.

*Background*

Appellant, a single man, first learned he was a father in August 2010, at which time the child was four years old. The boy's mother was using methamphetamine and not properly caring for the child so around December 1, 2010, appellant obtained custody. In statements to law enforcement officers, appellant admitted he first struck the child on Christmas Eve. From that point on, he struck the boy daily for allegedly lying to him, missing the toilet when he urinated, and hitting appellant.

On January 4, 2011, paramedics were called to the home because the child was unresponsive. He was covered with bruises on his face, neck, hands, abdomen, chest, lower lumbar, buttocks, and genitals. The boy never regained consciousness and died the next day. The cause of death was complications from blunt force injuries to the head.

*Issues 1 and 2 – Motion to Suppress and Sufficiency of the Evidence*

Appellant gave three separate statements to law enforcement officers. Those statements were admitted into evidence over his objection. According to appellant, they were inadmissible because he purportedly suffered from a head injury that affected his "executive functions" and ability to control impulses or conduct. We overrule the issue.

The standard of review is one of abused discretion. *Delao v. State,* 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). Furthermore, we examine the totality of the circumstances in determining whether that discretion was abused. *Id.* at 239.

Appellant voluntarily accompanied Sheriff Charles Blackburn to his office on January 4 after his son had been transported to the hospital. Although appellant rode in the sheriff's vehicle, he was not in hand restraints. The sheriff testified that appellant 1) was not under arrest but he was the primary suspect, 2) had been read his *Miranda*

2

warnings both at his house and prior to the interview in the sheriff's office, 3) signed a written waiver of those rights, 4) was not promised anything or threatened, 5) did not appear to be emotionally distraught, 6) never asked to terminate the interview, 7) never requested an attorney, and 8) was not denied food, water, or cigarettes. The interview lasted two and one-half hours, and the sheriff was not aware of any prior head injuries that appellant had suffered. At the end of the interview, he was arrested.

The second interview took place on January 5 and was conducted by Texas Rangers Jamie Downs and Jay Fisher in the sheriff's office. Before the interview started, appellant was informed that his son had died, was again read his *Miranda* rights, and again indicated that he understood them. Other testimony revealed that he never requested an attorney, was not coerced or threatened, was not promised anything, and was not denied basic necessities. Furthermore, he did not appear to be under the influence of drugs or alcohol and displayed a generally calm demeanor. That interview lasted two hours. Ranger Downs had been told by appellant's mother prior to the interview that appellant had been injured in a serious car accident years earlier which could have diminished his capacity. Nonetheless, appellant was considered to be lucid when interviewed and capable of providing appropriate answers to questions.

The third interview took place at appellant's request on January 8 and lasted one and one-half hours. Ranger Downs and Sheriff Blackburn conducted that interview. Appellant was read his rights for a fourth time and agreed again to speak to the officers. The interview was described as non-confrontational.

Although not presented at the suppression hearing, there was further evidence at trial that appellant had been examined by Dr. Phillip J. Davis, a psychologist. The latter acknowledged that though appellant suffered brain trauma potentially affecting his

3

executive functioning, it was not of the ilk to render him insane or unable to differentiate between right and wrong. Outside the presence of the jury, this same witness also testified that appellant's statements at issue were voluntarily made.

Evidence of a mental condition may be relevant to whether one has voluntarily confessed. *See Oursbourn v. State,* 259 S.W.3d 159, 172-73 (Tex. Crim. App. 2008). However, nothing in the record here suggests that any mental impairment from which appellant suffered prevented him from acting voluntarily under the circumstances and at the time of his confession or that the impairment affected his thought processes. *See Darnes v. State,* 118 S.W.3d 916, 921-22 (Tex. App.–Amarillo 2003, pet. ref'd) (noting that nothing in the record suggested that a mental condition known as "intermittent explosive disorder" from which the defendant allegedly suffered prevented him from acting voluntarily in giving his confession); *see also Davis v. State,* 313 S.W.3d 317, 338 (Tex. Crim. App. 2010) (stating that although expert testimony indicated that the defendant may suffer from mental illness, the evidence indicated that he was not suffering from a psychosis at the time he gave interviews to police). Moreover, an expert opined that appellant's statements were voluntary. Given this, we cannot say that the trial court lacked legal or factual basis (that is, abused its discretion) in rejecting appellant's complaint and admitting the statements.

And, to the extent that appellant also questions the sufficiency of the evidence underlying his conviction, we first note that he was charged with intentionally and knowingly causing the death of his son by striking him with his hand. In the aforementioned statements, he admitted to shoving the child back into the wall which had a hole in it and punching him in the head five to ten times. He was also the child's primary caregiver and the only one living in the house with the child at the time.

4

Additionally, medical evidence indicated that the child's injuries were not accidental and that he suffered from extensive bruising. This is some evidence from which the jury could infer beyond reasonable doubt that appellant intentionally or knowingly killed his son.

*Issue 2 – Insanity Defense*

Appellant contends that the evidence conclusively proved he was insane at the time of the assaults due to his brain trauma. We overrule the issue because one expert testified that appellant's trauma did not render him insane at the time. So, at best, the evidence created an issue of fact for the jury to resolve, and we will not second guess the manner in which it resolved the matter. *Brooks v. State,* 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010).

*Instruction on Lesser-Included Offense*

Appellant finally contends that the trial court should have submitted a charge on the lesser-included offense of criminally negligent homicide.[1] We overrule the issue.

Appellant again turns to the evidence of his brain trauma and its purported effect on his ability to control his actions as basis for his request. The argument posited is that the "evidence . . . found in Dr. Phillip J. Davis' testimony that Appellant's head injuries created in Appellant a condition which Dr. Davis testifies is 'disinhibition . . . an inability to stop one's behavior' . . . [is] . . . some evidence from which the jury could decide that though Appellant should have been aware of the risk of death to the child he was not." Yet, nowhere are we cited to evidence suggesting that an inability to "arrest" or stop behavior affects one's ability to formulate a particular *mens rea*. Nor are we cited to

---

[1]The jury was charged on the lesser-included offenses of felony murder and manslaughter.

evidence suggesting that appellant's conduct occurred automatically or reflexively without him first having to develop some *mens rea.*

As said by Dr. Davis (the expert upon whom appellant relied in proffering his argument), the affliction is "not the same as a severe mental illness affecting the individual's ability to recognize that her or his behavior was wrong. It's an incident of abnormal brain activity making it difficult, if not impossible, to arrest one's behavior." This tends to suggest that appellant was quite capable of engaging in thought processes and understanding the nature and consequences of his conduct. He simply had difficulty in stopping conduct potentially attributable to those processes. And without evidence suggesting that appellant's brain trauma prevented him from developing the requisite *mens rea* to commit murder, we cannot conclude that the evidence of the trauma somehow negated his ability to intentionally or knowingly kill. *See Rousseau v. State,* 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993) (stating that one is entitled to an instruction on a lesser-included offense if proof of the lesser offense is included within the proof necessary to establish the greater *and there is some evidence which would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense*) (emphasis added); *accord Yzaguirre v. State*, 394 S.W.3d 526, 531 (Tex. Crim. App. 2013) (refusing to hold that the trial court erred in omitting the lesser-included offense of robbery because "there was no evidence . . . that appellant committed only the crime of robbery . . . .").

Accordingly, the judgment is affirmed.

Per Curiam

Do not publish.

6