# PD-0841-15

PD-0841-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/7/2015 11:50:51 AM
Accepted 7/9/2015 3:31:38 PM
ABEL ACOSTA
CLERK

## NO. _____

## IN THE COURT OF CRIMINAL APPEALS

| | |
|---|---|
| RANDY ALLEN SEGURA | PETITIONER |
| VS. | |
| THE STATE OF TEXAS | RESPONDENT |

On appeal from cause number 01-14-00955-CR in the
First Court of Appeals and cause number 1383638
in the 177th District Court of Harris County, Texas

## PETITION FOR DISCRETIONARY REVIEW

KEN GOODE
P.O.Box 590947
Houston, Texas 77259
(409) 779-3631
State Bar # 08143200
Goodedkc@msn.com

FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner waives oral argument.

## IDENTIFICATION OF THE PARTIES

Randy Allen Segura                           Petitioner
TDCJ-ID
Huntsville, Texas


Skip Cornelius                               Defense Attorney
Houston, Texas


Rudy Duarte                                  Defense Attorney
Houston, Texas


Keri Fuller                                  Trial Prosecutor
Houston, Texas


Hon. Ryan Patrick                            Trial Judge
Houston, Texas


Ken Goode                                    Appellate Attorney
Houston, Texas


Devon Anderson                               Appellate D.A.
Houston, Texas

# TABLE OF CONTENTS

Statement of the Case................................................................. 1

Statement of Procedural History............................................... 1

Ground for Review

WHETHER THE COURT OF APPEALS ERRED WHEN CONDUCTING ITS EGREGIOUS-HARM REVIEW BY FAILING TO APPLY THE FACTORS REQUIRED BY **ALMANZA V. STATE** TO THE QUESTION OF THE IMPACT OF THE OMISSION OF A VOLUNTARINESS INSTRUCTION UNDER ARTICLE 38.22 SECTION 6.

Argument.................................................................................. 2

Prayer for Relief....................................................................... 4

Certificate of Word Count Compliance ................................... 5

Certificate of Service ............................................................. 5

# INDEX OF AUTHORITIES

## CASES

**Almanza v. State,**
    686 S.W.2d 157, 171 (Tex. Crim. App. 1985).................................. 4

**Ellison v. State,**
    86 S.W.2d 226, 228 (Tex. Crim. App. 2002)...................................... 4

**Oursbourn v. State**,
    259 S.W.3d 159, 179-80 (Tex. Crim. App. 2008)............................ 2

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Comes Now Randy Allen Segura, petitioner, and files this petition for discretionary review and in support shows as follows:

## STATEMENT OF THE CASE

Petitioner was charged by indictment with the offense of capital murder. Petitioner pleaded not guilty, and proceeded to jury trial. Punishment was set at life in prison after the jury found petitioner guilty as charged.

## STATEMENT OF PROCEDURAL HISTORY

In an unpublished opinion dated June 30, 2015 the First Court of Appeals affirmed the conviction and sentence.

No motion for rehearing was filed.

## GROUND FOR REVIEW

WHETHER THE COURT OF APPEALS ERRED WHEN CONDUCTING ITS EGREGIOUS-HARM REVIEW BY FAILING TO APPLY THE FACTORS REQUIRED BY **ALMANZA V. STATE** TO THE QUESTION OF THE IMPACT OF THE OMISSION OF A VOLUNTARINESS INSTRUCTION UNDER ARTICLE 38.22 SECTION 6.

## ARGUMENT

### I.

On appeal petitioner argued that the trial court erred by not submitting an Article 38.22 section 6 voluntariness instruction relating to his inculpatory videotaped statement. Petitioner contended that although he did not request the instruction, the trial court had a duty to submit the voluntariness instruction because it was part of the "law applicable to the case." **See Oursbourn v. State,** 259 S.W.3d 159, 179-80 (Tex. Crim. App. 2008). Petitioner further asserted that the omission caused him egregious harm.

Petitioner argued that in the absence of a voluntariness instruction, it is unlikely that the jury questioned the voluntariness of his confession, despite evidence that at the time of the interrogation he (1) hadn't slept, (2) had taken narcotics the night before, (3) was bipolar and schizophrenic, (4) had ADHD, and (5) was off his prescribed medications.

2

Petitioner contended that the lack of an instruction left the jury with zero guidance regarding how to evaluate the voluntariness of his custodial statement. To be sure, petitioner pointed out that the jury was unaware that it had to apply a reasonable doubt standard when determining the voluntariness of the confession.

Petitioner also argued that in the absence of the instruction, the jury was unaware that it could not consider the statement for any purpose if it found the statement to be involuntary.

For its part, the lower court held that the "state of the evidence strongly supports the guilty verdict." The lower court noted that in final argument, the State "spent the majority of its argument focusing on the evidence collected at the two crime scenes rather than appellant's recorded statement."

The lower court thus held that petitioner "had not shown egregious harm."

## II.

Petitioner asserts that the lower court's egregious-harm review was flawed. The court focused on the possible harm to petitioner because of the admission of his videotaped confession, rather than on the impact of the omission in the jury charge of a voluntariness instruction.

3

The lower court should have determined whether petitioner suffered egregious harm by analyzing the impact of the omission of the voluntariness instruction, not by analyzing the impact of the admission of the videotaped statement. **See Ellison v. State,** 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

In short, the lower court's analysis did not properly apply the factors required by **Almanza v. State,** 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) to the question of the impact of the omission of the voluntariness instruction.

The lower court's opinion is at odds with precedent from this court, thus warranting review.

**PRAYER FOR RELIEF**

WHEREFORE, petitioner prays that his ground for review be granted.

Respectfully submitted,

/S/_____
KEN GOODE
P.O.Box 590947
Houston, Texas 77259
(409) 779-3631; SBN 08143200
Goodedkc@msn.com

4

## CERTIFICATE OF WORD COUNT COMPLIANCE

Relying on the word count function in the word processing software used to produce this document I certify that the number of words used in this petition for discretionary review is 700.

/S/_____
KEN GOODE

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to the State and the State Prosecuting Attorney this 7th day of July 2015 by first class mail.

/S/_____
KEN GOODE



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-14-00955-CR

---

**RANDY ALLEN SEGURA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1383638**

---

## MEMORANDUM OPINION

A jury convicted appellant, Randy Allen Segura, of capital murder. Because

the State did not seek the death penalty, the trial court assessed punishment at

confinement for life. In his sole issue on appeal, appellant contends the trial court

erred in refusing to submit a jury charge regarding the voluntariness of his inculpatory videotaped statement. We affirm.

## BACKGROUND

The evidence in the light most favorable to the verdict is as follows. Otis "Jimmy" James was 83 years old and lived alone at his home in Highland, Texas. James used a walking stick because he had trouble walking, and his recliner was a "lift-chair" that he used to help him get up from his seat.

James owned the property next to his home and rented it out to appellant's grandmother, Cheryl Nunez. Appellant and his brother, Dustin Segura, also stayed with their grandmother at James's rent house. There were no problems between the two families; everyone got along well. Dustin Segura had a .22 caliber rifle in his room at his grandmother's house, which he used for protection and hunting. Appellant knew about the gun and knew where it was located.

The evidence shows that on April 8, 2013, appellant entered James's home through the unlocked back door. James was sitting in his recliner and watching television in the living room. Appellant began firing his brother's gun at James from the kitchen and continued firing as he moved down the hall toward James's location in the living room. Appellant shot James eight times in the face and neck. James was unarmed, and raised his hands to protect his face. After the shooting,

appellant took James's car keys and $184 from his pockets and fled in James's white pick-up truck.

Deputy A. King with the Harris County Sheriff's Office (HCSO) was the first officer to arrive on the scene. He accompanied EMS inside the home to treat James, and they confirmed that James was dead. King secured the scene, separated several witnesses who were at the scene—appellant's grandmother, brother, and friend, as well as several of James's relatives—and waited for homicide detectives to arrive. In talking to the witnesses, he learned that James's white pick-up truck was missing and alerted other officers to be on the lookout for the truck.

Deputy T. Kirkley with the HCSO crime scene unit arrived with Deputies M. McElvany, T. Rawls, and R. Hamlet to process the scene. The officers noticed that the back door was open, and there was no forced entry. They found two shell casings in the kitchen area and then three more in the living room. The location of these casings was consistent with a shooter entering through the back door and firing as he approached the living room where James sat in his recliner. All of the casings found in the home were .22 calibers. It also appeared that someone had rummaged through the house because mattresses were pushed off the beds and drawers had been pulled out and left open.

3

Outside of the home, officers found appellant's social security card, birth certificate, and juvenile identification card. They also saw tire marks on the street from someone backing out of the driveway quickly.

While officers were at the murder scene, they received word that James's truck had been located about nine miles down the highway. The truck had crashed on an embankment and was now located on an overpass. In the rear of the truck was a tire from the truck that had been bent beyond use, and the spare tire was on the truck.

Scott Harp, who lived near the area in which the truck was located, had heard a crash, and soon after saw a man in dressed in dark clothes walking with what looked like an assault rifle. William Wright, who was working nearby, also saw a man in dark clothes walking with what looked like an assault rifle. Both men called the police, which is what led to the discovery of James's truck. When the police sirens were close, Wright saw the man in the dark clothes take off running and he heard the man drop something in a nearby dumpster. Deputy A. Wright located the gun the man had been carrying on top of the dumpster, as indicated by Wright.

After canine units and helicopters exhausted all efforts looking for the suspect, who police believed to be appellant, officers towed the truck back to the station to be processed. Inside the vehicle, officers found several more spent .22

4

caliber casings that matched the casings from the crime scene at James's home. Additionally, appellant's DNA and fingerprints were found inside James's vehicle and on the hubcap that had been removed from the damaged tire. An analysis of the gun showed that it was a .22 caliber, AR-15, Stellar Mossberg and that all casings found from both crime scenes were fired from this gun. The gun belonged to appellant's brother.

Deputy C. Pool was assigned as lead investigator and, after speaking with witnesses at both the house and the truck and reviewing the evidence obtained, such as appellant's identification near the murder scene, concluded that appellant was the suspect for whom they were searching.

On April 9, the day after the murder, officers located appellant walking down the railroad tracks in Highlands, arrested him, and brought him to the station to be interviewed. Pool noticed that the appellant looked exhausted and hungry, as if he had been up all night. Before beginning the interview, Pool bought appellant a hamburger and fries and allowed him to eat. Pool read appellant his statutory rights, which appellant voluntarily waived, agreeing to speak with officers. Pool and the other officer who conducted the interview were both unarmed; appellant was not threatened, coerced, or promised anything in exchange for his statement.

In his recorded statement, appellant told officers that he was high on meth the day before and had not slept. He also said that he was bipolar, borderline

schizophrenic, had ADHD, and had been off of his medications for some time. Appellant admitted to stealing James's car keys and money, but said that he did not remember shooting him. The officer believed that appellant showed signs of deception when he stated that he did not remember.

Before trial, appellant filed a motion to suppress his recorded statement, alleging, among other things, that "the Defendant was not competent and did not understand his legal rights and could not have voluntarily consented to any search or questioning by any police officer or his agent." After a pretrial hearing on appellant's motion to suppress, the trial court denied the motion and the recorded statement was admitted at trial.

## VOLUNTARINESS INSTRUCTION

In his sole point of error, appellant contends the "trial court erred by failing to give the jury an article 38.22 section 6 voluntariness instruction relating to appellant's inculpatory videotaped statement." *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West Supp. 2014). Appellant did not request such an instruction, but contends that the trial court nonetheless had a duty to submit the charged because it was part of the "law applicable to the case." *See Oursbourn v. State*, 259 S.W.3d 159, 179–80 (Tex. Crim. App. 2008). Appellant further contends that the trial court's failure to submit the voluntariness charge caused him egregious harm. *See Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007) (citing *Almanza v. State*, 686, S.W.2d 157, 171 (Tex.

6

Crim. App. 1984)) (holding that, when defendant fails to request section 6 voluntariness charge, appellate court reviews effect of omission under egregious harm standard).

Section 6 sets out the procedures for litigating voluntariness claims in all cases in which a question is raised as to the voluntariness of a statement of an accused. *Oursbourn*, 259 S.W.3d at 174; *State v. Terrazas*, 4 S.W.3d 720, 724 (Tex. Crim. App. 1999). Claims of involuntariness under Article 38.22 can be, but need not be, predicated on police overreaching, and they can involve "sweeping inquiries into the state of mind of a criminal defendant who has confessed." *Oursbourn*, 259 S.W.3d at 172.

> Under Articles 38.21 and 38.22 and their predecessors, fact scenarios that can raise a state-law claim of involuntariness (even though they do not raise a federal constitutional claim) include the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights; (3) the suspect "lacked the mental capacity to understand his rights"; (4) the suspect was intoxicated, and he "did not know what he was signing and thought it was an accident report"; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; (6) the suspect was returned to the store he broke into "for questioning by several persons armed 'with six-shooters.'"

*Id.* at 172–73 (internal citations omitted). Although "youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, they are factors a jury, armed with a proper instruction, is entitled to consider." *Id.* As such, a defendant is entitled to a general voluntariness instruction if he has raised a question of the voluntariness of

7

his statement and a reasonable jury could find that the facts, disputed or undisputed, rendered the defendant unable to make a voluntary statement. *Id.* at 176.

Appellant contends that he "raised a voluntariness questions as to whether [he] was in a vulnerable mental state when he waived his legal rights and gave the videotaped statement" by presenting evidence that he told the police that he had not slept, had taken a lot of "meth" the night before, was bipolar and borderline schizophrenic, had ADHD, and was off his medications.

The State argues that "[e]ven if Article 38.22, section 6 was the 'law applicable' to this case, the appellant never requested that specific instruction during the charge conference[,]" and "has not shown egregious harm." We agree with the State.

Under the egregious-harm standard, reversible error in the omission of a required jury instruction without objection occurs only when a defendant has been denied a fair and impartial trial. *Id.* at 182. Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996)). "Egregious" harm is present when the case for conviction

was actually made clearly and significantly more persuasive by the error. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).

When conducting an egregious-harm review, we consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the trial record as a whole. *Stuhler*, 218 S.W.3d at 719. We place no burden of proof or persuasion to show egregious harm on either the defendant or the State. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Before we can find egregious harm, the record must show that the defendant has suffered actual, rather than merely theoretical, harm from the jury-charge error. *See Almanza*, 686 S.W.2d at 174. We determine whether appellant suffered egregious harm by analyzing the impact of the omission of the voluntariness instruction, not by analyzing the impact of the admission of the videotaped statement. *See Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002). With these principles in mind, we determine whether appellant was egregiously harmed by the omission of the section 6 "general" voluntariness instruction.

Here, appellant makes no other complaint about the jury charge, which is correct. The state of the evidence strongly supports the guilty verdict. Appellant's social security card, birth certificate, and Texas juvenile identification card were found at the victim's address. His fingerprints and DNA were found in the

9

victim's stolen truck. Two witnesses saw a man wearing dark clothes walking in the vicinity of the victim's stolen truck while carrying a rifle. One of those witnesses, William Wright, heard the man throw the gun in a dumpster. Police recovered the gun from the dumpster; it belonged to appellant's brother and appellant had access to it. The shell casings found in both the truck and the victim's home had been fired from that gun. Appellant was arrested walking on the railroad tracks in Highlands the next day; he was wearing black shorts and a black shirt and had not slept the night before. There was also evidence of a jailhouse phone call that appellant made, in which he discussed events that occurred after he stole appellant's truck. Regarding arguments, the defense was the first to mention appellant's statement, and in doing so argued that the State had no evidence that appellant admitted to the murder, only that appellant admitted to the robbery. The State responded, pointing out that appellant did not claim in his statement, as he tried to do at trial, that someone else committed the murder. Indeed, the State spent the majority of its argument focusing on the evidence collected at the two crime scenes rather than appellant's recorded statement.

After considering "the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the trial record as a

10

whole[,]" *see Stuhler*, 218 S.W.3d at 719, we hold that appellant has not shown egregious harm, and thus, has not been denied the right to a fair and impartial trial.

Accordingly, we overrule appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.


                                   Sherry Radack
                                   Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

11