

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00019-CR

_____

SHIRLEY A. FALKOWSKI, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 19F0210-005

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

Shirley A. Falkowski was convicted of murder by a Bowie County jury and sentenced to life imprisonment.[1]  On appeal, she argues that the trial court should have instructed the jury to consider the voluntariness of the confession she made to law enforcement.  Falkowski argues that the confession did not meet the requirements of Article 38.22, Section 6, and Article 38.21 of the Texas Code of Criminal Procedure.  Because we find no evidence in the record raising the voluntariness issue, we overrule both points of error and affirm the trial court's judgment.

## I.    Background

James Earl Johnson, known to acquaintances and friends as Piggy, was found stabbed to death in his home on August 5, 2015.  Johnson and Falkowski were friends and occasional paramours.  A bloody shoe print was found at the scene.  Falkowski was seen rummaging through the dumpster at her apartment on August 6.  Law enforcement searched that dumpster on August 7 and found a plastic shopping bag that contained a pair of woman's shoes with blood on them.  Blood on one of those shoes matched Johnson's DNA.  Johnson's blood was also found on a seat in the car that Falkowski was driving the day after the murder.

A video from an ATM showed Falkowski unsuccessfully trying to withdraw money in the hours after Johnson's death.  Falkowski told Texas Ranger Greg Wilson that Johnson often let her use his ATM card to acquire beer and cigarettes.  Falkowski's friend, Desmond Griffin, testified that on the night of the murder, Falkowski came to Griffin's house to buy drugs and

---

[1]*See* TEX. PENAL CODE ANN. § 19.02.  It was proven during the punishment phase that Falkowski had a prior murder conviction in Missouri.

gave him money with blood on it.[2]  Finally, in an interview with a Texas Ranger investigator in February 2019, Falkowski confessed to killing Johnson.

## II.      Evidence about the Voluntariness of Falkowski's Confession

Both of Falkowski's points of error complain of the trial court's denial of a jury charge instruction that instructed the jury not to consider Falkowski's confession unless it found that the confession was made voluntarily.  First, she claims a violation of Article 38.22, Section 6, of the Texas Code of Criminal Procedure.[3]  Falkowski also argues that the instruction should have been given under the authority of Article 38.21.[4]

Johnson was murdered on August 5, 2015.  Although law enforcement investigated the case and gathered significant evidence, there was a lapse of more than three years before prosecution.[5]  In February 2019, Texas Ranger Greg Wilson, along with another Ranger and Lance Hall, the investigator for the Bowie County District Attorney's Office, visited Falkowski's father, George Harris.  Falkowski lived in a trailer behind Harris.  At Wilson's request, Falkowski went to the DeKalb Police Department.  She was driven by her father.  Falkowski was not arrested or handcuffed and was free to leave the police station.

---

[2]Griffin testified that he had sold Falkowski crack cocaine before but that he had none on the night at issue. Falkowski told Griffin that the bills had ketchup, not blood, on them, but Griffin did not believe her.  He gave the bills back to Falkowski, as he had no drugs to sell that night, and Falkowski left.

[3]*See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6.

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.21.

[5]Wilson explained that the delay in prosecution was due to (1) the amount of time it took to get a complete DNA analysis from the Department of Public Safety's crime laboratory, (2) the original Texas Ranger investigator retired, (3) another investigator working on the case was promoted, and (4) there was a change in the DeKalb Police Department administration.

Different portions of the recorded interview of Falkowski were admitted into evidence as three separate exhibits.  The first exhibit shows Wilson questioning Falkowski about her involvement with Johnson's death.  During the interview, Wilson confronted Falkowski with inculpatory evidence, such as the victim's blood located in the car that she was found driving after the murder.  Falkowski claimed that Johnson was never in the car.  Wilson also told Falkowski that he knew she had put the shoes she wore during the murder in a bag and then put the bag in a dumpster.  Falkowski asked to speak to her father, who was brought into the room.  The recording shows that Falkowski was visibly distraught, and she told her father that she "did it," she "took Piggy's life."

The second segment of the interview was less than two minutes long.  During that segment, Falkowski asked to speak to Hall.  Wilson explained Hall's role as an investigator and that the State would decide how the case would proceed.  After Hall entered the room, Falkowski told him that she knew what she did was wrong.  She stated that she did not wish to go to trial and that she did not want to face anyone.  Falkowski also stated that she was ashamed of her actions.  Hall told Falkowski that he would relay her comments to the district attorney.[6]

Nothing about her behavior or demeanor suggested to Wilson that Falkowski did not want to speak to him.  He had no reason to warn her of her rights, Wilson said, because she was not in custody and she was free to leave.  Wilson's tone throughout the interview was conversational, polite, and measured.

---

[6]The third recording, State's Exhibit 31, is around two minutes and forty seconds long.  The recording captures Wilson asking Falkowski why she killed Johnson.  In response, Falkowski remained silent and seemed distraught or upset.  She did not answer Wilson's question but said that she took his life and deserved to die.  Wilson also asked how she killed Johnson.  Falkowski responded that she killed him with a knife that she found in Johnson's home.  Wilson also inquired if Falkowski put the shoes in the dumpster.  Falkowski answered that she did.

Hall corroborated Wilson's testimony that Falkowski voluntarily went to the station, driven by her father. Hall testified that Falkowski was not under arrest or handcuffed. Based on the recordings introduced into evidence, she did not appear to be under the influence of alcohol or drugs. Falkowski also responded to questions, demonstrated no sense of confusion, and seemed to understand the situation and what was going on. Hall testified that he waited in the lobby while Wilson interviewed Falkowski in an office that Hall said was about eight to ten feet away. Hall chatted with Falkowski's father and heard no "yelling or screaming" from the interview room. Eventually, Hall was asked to come into the room with Wilson to explain his role as the investigator for the district attorney's office. Hall testified that he and Wilson told Falkowski that the district attorney would decide how the case would proceed and that the law enforcement officers had no control over those matters.[7]

### III.     No Error in Denial of Instruction on Article 38.22, Section 6, Grounds

#### A.     Standard of Review

Falkowski's first point of error claims that Article 38.22, Section 6, of the Texas Code of Criminal Procedure required the trial court to instruct the jury not to consider the confession unless they found that it had been made voluntarily. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. "In all cases where a question is raised as to the voluntariness of a statement of an accused, the [trial] court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions." *Id.* "It is only after the trial judge

---

[7]Hall testified that Falkowski "was wanting to know what [they] could do to help her, which [he] and Ranger Wilson both told her that [they] couldn't make that decision, that was something that had to go to the district attorney and that [they] would let it be known that she did not want a trial . . . ."

is notified of the voluntariness issue (or raises it on his own) that a chain of other requirements comes into play, culminating in the defendant's right to a jury instruction." *Oursbourn v. State*, 259 S.W.3d 159, 175 (Tex. Crim. App. 2008). In *Oursbourn*, The Texas Court of Criminal Appeals explained the process and the requirements that the trial court must follow:

> The language "where a question is raised" contrasts with the language found in Article 38.22, § 7 and Article 38.23 which speaks of the evidence raising an issue. Because raising a "question" is what triggers the trial court's duty under Section 6 to conduct a hearing outside the presence of the jury, the only reasonable reading of this language is that a "question is raised" when the trial judge is notified by a party or raises on his own an issue about the voluntariness of the confession. This is the sequence of events that seems to be contemplated by Section 6: (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction.

*Id.* (footnotes omitted) (citations omitted).

"Under article 38.22, there is no error in refusing to include a jury instruction where there is no evidence before the jury to raise the issue." *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007). "Some evidence must have been presented to the jury that the defendant's confession was not given voluntarily." *Id.*[8] "Absent police conduct causally related to the

---

[8]The court in *Vasquez* found that the "defense introduce[d] evidence at trial from which a reasonable jury could find that the confession was not voluntarily made" and, thus, a Section 6 "voluntariness instruction should [have] been given." *Vasquez*, 225 S.W.3d at 546. In support of his request for an instruction on voluntariness, Vasquez

> cited several parts of the interrogation as evidence raising the issue of voluntariness: the length of the interrogation, that the detectives lied to him during the interrogation about having incriminating evidence from the crime scene, that the detectives suggested that giving a statement

confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986); *see Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). "A statement is 'involuntary,' for the purposes of federal due process, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado*, 912 S.W.2d at 211.

### B.   No Evidence Confession was Involuntary

Falkowski argues that she raised voluntariness by requesting an instruction at the charge conference and then via written motion. Yet, at that point, the evidence had closed. Falkowski has provided no authority that a request after the close of evidence, where no evidence raised the issue, satisfies the requirement of the Texas Code of Criminal Procedure and caselaw.

Falkowski also argues on appeal that the following were each "some evidence of coercion" and, thus, raised the issue of involuntariness:

- "the set up and location for the interview,"

- Texas Ranger Greg Wilson, who Falkowski claims is "a very large man" and wore "the quintessential Texas Ranger uniform of "khaki pants, a white shirt, a tie, a badge, a side-arm and a white cowboy hat,"[9] and

- Wilson's misrepresentation that evidence had been found in Johnson's apartment and that "he would attempt to help her with regard to her criminal prosecution."

---

would help him, and that the detectives suggested that if he didn't make a statement[,] they were going to implicate his wife in the offense.

*Id.* at 543. His non-custodial interview lasted seven hours, and he was not allowed to leave or speak to his wife despite his requests. *Id.* at 542. In contrast, Falkowski's defensive theory was that another person was the murderer. It is only in her appellate brief that she tries to couch the circumstances of her questioning as coercive.
[9]Wilson's white cowboy hat was on a filing cabinet in the office throughout the interview.

7

Still, Falkowski does not elaborate on her claim that the "set up and location for the interview" were coercive. She voluntarily went to the police department and was not arrested or handcuffed. From the segments of the recorded interview, the office seems ordinary and in no way threatening. On two or three occasions, Wilson can be seen walking through the camera's frame. It is true that he appeared to be a very solidly built man wearing a shirt, tie, khaki trousers, and a sidearm on his hip. That said, we do not understand how his physical presence could be deemed coercive. Throughout the interview, Wilson's tone of voice was measured, calm, polite, and professional. He never raised his voice or acted intimidating in any way.

As for Falkowski's claim that Wilson promised to help her with her prosecution, it is true that Wilson used the word "help" several times in the portions of the interview included in the record. Those were mostly in the context of Wilson saying, in effect, "[L]et me help you help Mr. Johnson." Falkowski asked Wilson what he meant by help. Wilson explained that he had conducted many such interviews and worked similar cases. Wilson told Falkowski that, in his experience, judges and juries tend to look more favorably on defendants that cease being deceptive when confronted with damning evidence.

Falkowski summarily claimed that Wilson misrepresented the existence of inculpatory evidence from Johnson's apartment. Even so, she did not explain that claim or direct us to specific evidence in the record. It was undisputed that a shoeprint was found in the blood at the scene. That shoeprint matched a shoe with Johnson's blood, and Falkowski admitted putting that shoe and its mate in the dumpster near her apartment the day after Johnson's murder. Evidence

8

was also admitted that Johnson's DNA—his blood—was found in the car Falkowski had been driving the day after the murder. Thus, we do not find any misrepresentation on Wilson's part.

The three interview recordings show that Wilson calmly and politely questioned Falkowski and contain no evidence of threating or coercive behavior. At one point, Wilson said, "I hope you don't think I ever treated you mean," and Falkowski shook her head and said, "Oh no." From our review of the record, we have found no evidence that Falkowski's confession was given involuntarily. Moreover, none of the steps outlined in *Oursbourn* occurred in this case. As a result, Falkowski did not establish a right to her requested jury instruction. We therefore overrule her first point of error.

## IV. No Error in Denying Instruction Under Article 32.21

In her second point of error, Falkowski argues that the trial court should have instructed the jury to consider whether her confession was made freely and voluntarily as required by Article 38.21 of the Texas Code of Criminal Procedure.

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX. CODE CRIM. PROC. ANN. art. 38.21. We are to consider the totality of the circumstances when analyzing the voluntariness of a confession. *See Delao v. State*, 235 S.W.3d 235, 236 (Tex. Crim. App. 2007). "Before a requested instruction on the voluntariness of a confession is required, some evidence must be presented to the jury that raises the issue." *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000).

9

As discussed above, we found no evidence that Falkowski's confession was given involuntarily. Moreover, after reviewing the totality of the circumstances, it appears that Falkowski's statements were made freely and voluntarily and without compulsion or persuasion. As a result, we overrule Falkowski's second point of error.

## V.     Conclusion

For these reasons, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     November 4, 2021
Date Decided:     March 7, 2022

Do Not Publish